1

2

3

4

5

6

7                                    UNITED STATES DISTRICT COURT
                                    WESTERN DISTRICT OF WASHINGTON
8                                             AT SEATTLE

9

10        GS HOLISTIC, LLC,                              CASE NO. C23-5227JLR

11                         Plaintiff,                    ORDER

                    v.
12

          BARRETT & MITCHELL
13        ENTERPRISES, INC., et al.,

14                         Defendants.

15
                                    I.      INTRODUCTION
16
            Before the court is Plaintiff GS Holistic, LLC's ("GS Holistic") motion for entry
17
   of default judgment against Defendants Barrett & Mitchell Enterprises, Inc., d/b/a The
18
   Greenroom ("The Greenroom") and Rozalynn Mitchell (together, "Defendants").  (Mot.
19
   (Dkt. # 20); *see* Prop. Judgment (Dkt. # 20-3).)  Neither Defendant has appeared in this
20
   action, and the Clerk has entered default against both Defendants.  (*See* Dkt.; 8/29/23
21
   Entry of Default (Dkt. # 14); *see also* 10/4/23 Order (Dkt. # 18) (dismissing GS
22

1   Holistic's claims against former Defendant Timothy Mitchell without prejudice for

2   failure to effect timely service).)  The court has considered GS Holistic's motion, the

3   materials it submitted in support of its motion, the relevant portions of the record, and the

4   governing law.  Being fully advised, the court GRANTS in part and DENIES in part GS

5   Holistic's motion for entry of default judgment.

6                              **II.      BACKGROUND**

7        GS Holistic is a Delaware limited liability corporation ("LLC") that has its

8   principal place of business in California.  (Compl. (Dkt. # 1) ¶ 4.)  It alleges that it is the

9   owner of the "G PEN" trademarks, has worked to distinguish the G Pen brand as "the

10  premier manufacturer of vaporizers," and has devoted significant time and resources to

11  promoting and protecting its trademark.  (*Id.* ¶¶ 4, 8-10, 17.)  In 2016, Grenco Science,

12  Inc. assigned to GS Holistic all rights associated with the G PEN trademark and other

13  trademarks associated with products sold by GS Holistic.  (*Id.* ¶ 11.)  As a result, GS

14  Holistic is now the owner of 21 registered trademarks—including word marks, standard

15  character marks, and design plus words marks—related to its G Pen products (together,

16  the "G Pen Marks"[1]).  (*Id.* ¶¶ 12(a)-(u).)  GS Holistic asserts that consumers are willing

17  to pay more for "the recognized quality and innovation associated with the G Pen

18  Marks."  (*Id.* ¶ 21.)  Thus, genuine G Pen brand vaporizers are priced between $70.00

19  and $250.00 while equivalent non-G Pen products usually sell for between $11.00 and

20  $20.00.  (*Id.*)

21

22       [1] GS Holistic uses the terms "G Pen Marks" and "G Pen Trademarks" interchangeably in
     its complaint.  (*See generally* Compl.)  The court uses the term "G Pen Marks" in this order.

1    Defendant The Greenroom is a Washington corporation that has its principal place

2  of business in Washington.  (*Id.* ¶ 5.)  Defendant Rozalynn Mitchell is a resident and

3  citizen of Washington and is one of the owners of The Greenroom.  (*Id.* ¶¶ 7, 22, 24.)  GS

4  Holistic alleges that Defendants have offered for sale counterfeit goods bearing

5  "reproductions, counterfeits, copies and/or colorable imitations of one or more" of the

6  following G Pen Marks:  (a) U.S. Trademark Registration No. 4,390,645 "for the

7  standard character mark 'G Pen' in association with goods further identified in [the]

8  registration in international class 010"; (b) U.S. Trademark Registration No. 4,466,586

9  "for the word mark 'G' and its logo in association with goods further identified in the

10  registration in international class 010"; and (c) U.S. Trademark Registration No.

11  4,462,090 "for the standard character mark 'MicroG' in association with goods further

12  identified in the registration in international class 010" (together, the "Infringing

13  Marks").  (*Id.* ¶¶ 26(a)-(c); *see* Mot., Ex. A (screenshots of pages from the United States

14  Patent and Trademark Office's Trademark Electronic Search System that describe these

15  trademarks).)  On December 13, 2022, according to GS Holistic, its investigator visited

16  The Greenroom's location; observed that the shop had "an excess of vaporizers" that

17  displayed the G Pen Marks; purchased "a Micro G Vaporizer with a G Pen Mark affixed

18  to it" for $71.59; and determined the vaporizer "was a [c]ounterfeit product in that it

19  displayed the Infringing Marks."  (Compl. ¶ 30.)

20    GS Holistic filed its complaint on March 16, 2023.  (*Id.* at 1.)  It alleges claims

21  under the Lanham Act against both Defendants for counterfeiting and trademark

22  infringement in violation of 15 U.S.C. § 1114 and for false designation of origin and

1   unfair competition in violation of 15 U.S.C. § 1125(a).  (*Id.* ¶¶ 52-69.)  Among other

2   relief, it seeks damages, costs of suit, a permanent injunction prohibiting Defendants

3   from continuing to infringe its G Pen trademarks, and an order requiring Defendants to

4   deliver all infringing products to GS Holistic for destruction.  (*Id.* at 14-16.)

5        GS Holistic served The Greenroom on June 12, 2023, and Ms. Mitchell on June

6   14, 2023.  (*See* Service Affs. (Dkt. ## 7, 10).)  The Clerk entered default against

7   Defendants on August 29, 2023.  (8/29/23 Entry of Default.)  GS Holistic filed this

8   motion for entry of default judgment on January 29, 2024.  (Mot.)

9                          **III.    ANALYSIS**

10       Below, the court sets forth the relevant legal standard and then evaluates GS

11  Holistic's motion for entry of default judgment.

12  **A.    Legal Standard**

13       Federal Rule of Civil Procedure 55(b)(2) authorizes the court to enter default

14  judgment against a defaulting defendant upon the plaintiff's motion.  Fed. R. Civ. P.

15  55(a), (b)(2).  After default is entered, well-pleaded factual allegations in the complaint,

16  except those related to damages, are considered admitted and are sufficient to establish a

17  defendant's liability.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir.

18  1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

19       Entry of default judgment is left to the court's sound discretion.  *Aldabe v. Aldabe*,

20  616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion, the court considers

21  seven factors (the "*Eitel* factors"):  (1) the possibility of prejudice to the plaintiff if relief

22  is denied; (2) the substantive merits of the plaintiff's claims; (3) the sufficiency of the

ORDER - 4

1   claims raised in the complaint; (4) the sum of money at stake in relationship to the

2   defendant's behavior; (5) the possibility of a dispute concerning material facts;

3   (6) whether default was due to excusable neglect; and (7) the preference for decisions on

4   the merits when reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.

5   1986).  After the court determines that default judgment is appropriate, it must then

6   determine the amount and character of the relief that should be awarded.  *See TeleVideo*,

7   826 F.2d at 917-18.

8   **B.      Whether the *Eitel* Factors Favor Default Judgment**

9          The court preliminarily determines that default judgment is warranted in this case

10  because, on balance, the *Eitel* factors weigh in favor of such judgment.  The court

11  discusses each factor in turn.

12          1.      Possibility of Prejudice to Plaintiff

13          The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default

14  judgment is not entered.  *See PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

15  1177 (C.D. Cal. 2002).  Without default judgment, GS Holistic will suffer prejudice

16  because it will "be denied the right to judicial resolution" of its claims and will be

17  "without other recourse for recovery."  *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D.

18  388, 392 (C.D. Cal. 2005).  Thus, the first *Eitel* factor weighs in favor of entering default

19  judgment.

20          2.      Substantive Merits and Sufficiency of the Complaint

21          The second and third *Eitel* factors—the substantive merits of the plaintiff's claim

22  and the sufficiency of the plaintiff's complaint—are frequently analyzed together.

ORDER - 5

1   *PepsiCo*, 238 F. Supp. 2d at 1175.  For these two factors to weigh in favor of default

2   judgment, the complaint's allegations must be sufficient to state a claim for relief.

3   *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).  A complaint satisfies this

4   standard when it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to

5   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

6   *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)).  At the default judgment stage, the

7   court "must take the well-pleaded factual allegations [in the complaint] as true" but

8   "necessary facts not contained in the pleadings, and claims which are legally insufficient,

9   are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267

10  (9th Cir. 1992).

11          GS Holistic alleges claims for trademark counterfeiting and infringement under 15

12  U.S.C. § 1114 and false designation of origin and unfair competition under 15 U.S.C.

13  § 1125(a).  (Compl. ¶¶ 52-69.)  The court reviews each in turn.

14                  *a.      Trademark Counterfeiting and Infringement*

15          To prove liability for trademark infringement, the trademark holder must

16  demonstrate: (1) "ownership of a valid mark (i.e., a protectable interest)"; and (2) the

17  alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake, or to

18  deceive" consumers.  *Reno Air Racing Ass'n., v. McCord*, 452 F.3d 1126, 1134 (9th Cir.

19  2006) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,

20  602 (9th Cir. 2005)).

21          First, GS Holistic has provided uncontested proof that it is the owner of the G Pen

22  Marks by virtue of assignment.  (*See generally* Mot., Ex. A.  *See also* Compl. ¶ 4 ("GS

ORDER - 6

1 [Holistic] is the registered owner of the 'G PEN' trademarks.").)  Thus, GS Holistic has

2 satisfied the first element of trademark infringement for the purpose of default judgment.

3       Second, "[l]ikelihood of confusion exists when consumers viewing the mark

4 would probably assume that the goods it represents are associated with the source of a

5 different product identified by a similar mark." *KP Permanent Make-Up*, 408 F.3d at

6 608.  Courts generally evaluate eight factors to determine whether confusion is likely:

7 "1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of

8 the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree

9 of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent

10 in selecting the mark; and 8) the likelihood of expansion into other markets." *Id*.  Where

11 a defendant uses a counterfeit mark, however, courts both within and outside the Ninth

12 Circuit presume a likelihood of consumer confusion.  *See Coach, Inc. v. Pegasus Theater*

13 *Shops*, No. C12-1631MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013)

14 (compiling cases); *see also Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse*

15 *Corp.*, 689 F. Supp. 2d 585, 597 (S.D.N.Y. 2010) ("To find a likelihood of confusion, a

16 court need only determine that the items at issue are counterfeit and that the defendant

17 distributed, offered for sale, or sold the items.").  The Lanham Act defines a "counterfeit"

18 as "a spurious mark which is identical with, or substantially indistinguishable from, a

19 registered mark."  15 U.S.C. § 1127.

20       Here, GS Holistic alleges that its investigator purchased a vaporizer with a G Pen

21 Mark "affixed" to it and determined that it was a counterfeit product that displayed the

22 "the Infringing Marks."  (Compl. ¶ 30.)  GS Holistic further alleges that the "Infringing

ORDER - 7

1    Marks" are "reproductions, counterfeits, copies and/or colorable imitations of one or

2    more" of a subset of three G Pen Marks. (*Id.* ¶ 26.) Accordingly, the court concludes

3    that GS Holistic has sufficiently alleged that Defendants sold a product bearing a

4    counterfeit mark and, as a result, there is a presumption of consumer confusion. *See*

5    *Coach, Inc.*, 2013 WL 5406220, at *3. Thus, because GS Holistic has demonstrated that

6    it owns a valid mark and that Defendants' use of the mark is likely to cause consumer

7    confusion, the court concludes that GS Holistic has sufficiently alleged its trademark

8    counterfeiting and infringement claim.

9                              b.       *False Designation of Origin*

10        To show liability for false designation of origin, the plaintiff must show that the

11   defendant "(1) use[d] in commerce (2) any word, false designation of origin, false or

12   misleading description, or representation of fact, which (3) is likely to cause confusion or

13   misrepresents the characteristics of his or another person's goods or services." *Freecycle*

14   *Network, Inc. v. Oey*, 505 F.3d 898, 902 (9th Cir. 2007). As to the first two elements, GS

15   Holistic alleges that Defendants sold (and thus, used in commerce) at least one vaporizer

16   bearing at least one of the Infringing Marks. (Compl. ¶¶ 29-30.) And the court

17   concluded above that GS Holistic has plausibly alleged a likelihood of confusion

18   resulting from Defendants' use of the Infringing Marks. Accordingly, GS Holistic has

19   stated a false designation of origin claim.

20        Because GS Holistic has demonstrated that its claims have substantive merit and

21   that it has sufficiently alleged those claims in its complaint, the court concludes that the

22   second and third *Eitel* factors weigh in favor of default judgment.

ORDER - 8

1    3.    Sum of Money at Stake

2    Under the fourth *Eitel* factor, "the court must consider the amount of money at

3    stake in relation to the seriousness of the [d]efendant's conduct." *PepsiCo*, 238 F. Supp.

4    2d at 1176.  Here, GS Holistic seeks (1) $150,000 in statutory damages—$50,000 per

5    Infringing Mark—for willful trademark counterfeiting under 15 U.S.C. § 1117(c)(2) and

6    (2) costs in the amount of $1,393.57.  (*See* Mot. at 12-13.)  The court concludes that the

7    requested statutory damages and costs are not so unreasonable in relation to the conduct

8    alleged in the complaint as to weigh against entry of default judgment.

9    4.    Possibility of a Dispute over Material Facts

10    "The fifth *Eitel* factor considers the possibility of dispute as to any material facts

11    in the case." *PepsiCo*, 238 F. Supp. 2d at 1177.  Where, as here, the defendant has

12    defaulted, the court must take all well-pleaded allegations in the complaint as true, except

13    those related to damages.  *TeleVideo*, 826 F.2d at 917-18; s*ee also Wecosign, Inc. v. IFG*

14    *Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed

15    a well-pleaded complaint, the possibility of dispute concerning material facts is

16    remote.").  Thus, the court concludes there is little risk of dispute over material facts and

17    the fifth *Eitel* factor weighs in favor of granting default judgment.

18    5.    Excusable Neglect

19    The sixth *Eitel* factor considers the possibility that the defendant's default resulted

20    from excusable neglect.  *PepsiCo*, 238 F. Supp. 2d at 1177.  Here, GS Holistic has

21    provided evidence that Defendants were served (*see* Service Affs.), and there is no

22    evidence in the record that Defendants' failure to answer or respond is the result of

ORDER - 9

1   excusable neglect.  Accordingly, the court concludes that the sixth *Eitel* factor weighs in

2   favor of default judgment.

3           6.      Policy Favoring Decisions on the Merits

4           "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

5   782 F.2d at 1472.  Where, as here, a defendant fails to appear or defend itself in action,

6   however, the policy favoring decisions on the merits is not dispositive.  *PepsiCo*, 238 F.

7   Supp. 2d at 1177.  Therefore, the court concludes that the seventh *Eitel* factor does not

8   preclude entry of default judgment.

9           In sum, because the *Eitel* factors weigh in favor of default judgment, the court

10  concludes that entry of default judgment is warranted in favor of GS Holistic on its

11  claims against Defendants.

12  **C.      Requested Relief**

13          The court now turns to the issue of remedies.  "A default judgment must not differ

14  in kind from, or exceed in amount, what is demanded in the [complaint]."  Fed. R. Civ. P.

15  54(c); *see Fong v. United States*, 300 F.2d 400, 413 (9th Cir. 1962).  Defaulting

16  defendants are not deemed to have admitted the facts alleged in the complaint concerning

17  the amount of damages.  *TeleVideo*, 826 F.2d at 917.  Rather, the plaintiff "must 'prove

18  up' the amount of damages that it is claiming." *Philip Morris USA, Inc. v. Castworld

19  Prod., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003); *see also* Local Rules W.D. Wash.

20  //

21  //

22  //

ORDER - 10

1    LCR 55(b)(2).[2]  By analogy, plaintiffs must also "prove up" their entitlement to other

2    forms of relief, such as a permanent injunction.  *See Gucci Am., Inc. v. Tyrrell–Miller*,

3    678 F. Supp. 2d 117, 120-21 (S.D.N.Y. 2008).

4         GS Holistic requests statutory damages, litigation costs, injunctive relief, and

5    destruction of the infringing products.  (*See* Mot. at 11-14.)  The court considers each

6    remedy below.

7         1.    Statutory Damages

8         Under the Lanham Act, a plaintiff may elect whether to recover its actual damages

9    caused by the defendants' use of a counterfeit mark or statutory damages.  15 U.S.C.

10   § 1117(c).  GS Holistic has elected to seek statutory damages.  (Mot. at 11-13; *see*

11   Compl. at 15-16 (including statutory damages in its prayer for relief).)

12        The court has discretion to award statutory damages between $1,000 and $200,000

13   "per counterfeit mark per type of goods or services sold, offered for sale, or distributed,

14   as the court considers just."  15 U.S.C. § 1117(c)(1).  If, however, the court finds that the

15   trademark violation was willful, it may award up to $2,000,000 for each infringement.

16   *Id.* § 1117(c)(2).  "[S]tatutory damages may compensate the victim, penalize the

17   _____

18   [2] This court's Local Civil Rules require plaintiffs to support a motion for default
     judgment with:

19        a declaration and other evidence establishing [the] plaintiff's entitlement to a sum
          certain and to any nonmonetary relief sought.  [The] [p]laintiff shall provide a
20        concise explanation of how all amounts were calculated, and shall support this
          explanation with evidence establishing the entitlement to and amount of the
21        principal claim, and, if applicable, any liquidated damages, interest, attorney's fees,
          or other amounts sought[.]

22   Local Rules W.D. Wash. LCR 55(b)(2).

1   wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v.*

2   *Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023) (citing *Nintendo of Am., Inc. v.*

3   *Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)).  When determining the

4   appropriate amount of statutory damages to award on default judgment, courts consider

5   whether the amount bears a "plausible relationship to [the p]laintiff's actual damages."

6   *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D. Cal. 2014) (quoting *Adobe Sys., Inc.*

7   *v. Tilley*, No. C 09-1085 PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)).  That

8   is, although a plaintiff in a trademark infringement suit is entitled to damages that will

9   compensate and serve as a deterrent, "it is not entitled to a windfall."  *Id.*

10          GS Holistic requests statutory damages of $50,000 for each of the Infringing

11   Marks, for a total of $150,000.  (Mot. at 11-13.)  GS Holistic's evidence of its actual

12   damages caused by Defendants' trademark violations, however, is limited to allegations

13   that its investigator observed "an excess of" vaporizers that displayed G Pen Marks and

14   purchased a single vaporizer with an unspecified Infringing Mark "affixed to it" for

15   $71.57.  (*See* Compl. ¶ 30; *see also id.* ¶¶ 36, 38-40 (alleging that The Greenroom sold

16   counterfeit goods "under the Infringing Mark"); *id.* ¶ 37 (alleging that "[t]he Infringing

17   Mark affixed to the Counterfeit Goods . . . is confusingly identical or similar to the G Pen

18   Marks").)  GS Holistic asserts in its motion that the vaporizer bore "three (3) fake G Pen

19   Marks."  (Mot. at 10.)  Because it did not make this allegation in its complaint, however,

20   that fact has not been established by Defendants' default.  (*See generally* Compl.)  GS

21   Holistic also contends that its chief executive officer's declaration establishes that

22   $150,000 is "only a fraction of the actual losses to its business" caused by counterfeiters.

1   (Mot. at 12.)  That declaration, however, (1) asserts, without explanation, that GS

2   Holistic's 2021 sales would have totaled $23,250,000 absent counterfeit products in the

3   market and (2) says absolutely nothing about the damages specifically caused by

4   Defendants in this case.  (*See generally* 2d Folkerts Decl. (Dkt. # 22) ¶¶ 8-13.)

5        The court is sympathetic to the difficulties GS Holistic faces in estimating actual

6   damages with any degree of certainty without the benefit of Defendants' cooperation in

7   discovery.  (*See* Mot. at 12.)  Without more evidence, however, the court cannot conclude

8   that an award of $50,000 in statutory damages for each of the Infringing Marks bears a

9   "plausible relationship" to GS Holistic's actual damages.  *Yelp Inc.*, 70 F. Supp. 3d at

10  1102.  Thus, because GS Holistic alleges only that the vaporizer its investigator

11  purchased had "a G Pen Mark affixed to it" (Compl. ¶ 30), the court concludes that GS

12  Holistic is entitled to statutory damages based on Defendants' conduct with respect to

13  only one trademark.  The court further concludes, in its discretion, that an award of

14  $2,000 for one trademark violation will serve the compensatory, penal, and deterrent

15  purposes of statutory damages without resulting in an undue windfall for GS Holistic.

16  Accordingly, the court awards GS Holistic statutory damages of $2,000.

17       2.    Litigation Costs

18       Under the Lanham Act, a plaintiff who establishes that a defendant has violated a

19  trademark "shall be entitled, . . . subject to the principles of equity, to recover . . . the

20  costs of the action."  15 U.S.C. § 1117(a).  Here, GS Holistic seeks costs in the total

21  amount of $957.59, consisting of the filing fee ($402.00), its process server fees

22  ($855.00), and its investigator's fees ($136.57).  (Mot. at 13 (citing Harris Decl. (Dkt.

1 | # 23) ¶ 6); *see* Compl. at 15-16 (including costs of suit in its prayer for relief).)  The court

2 | awards GS Holistic its filing fee and process server fees because these are costs that are

3 | routinely awarded in Lanham Act cases.  GS Holistic has not, however, cited any

4 | authority for the proposition that its investigator's fees are recognized "costs of the

5 | action" under the Lanham Act.  (*See generally* Mot.)  Therefore, the court awards GS

6 | Holistic costs in the amount of $1,257.00.

7 |       <u>3.</u>     <u>Injunctive Relief</u>

8 |       The Lanham Act empowers courts "to grant injunctions, according to the

9 | principles of equity and upon such terms as the court may deem reasonable, to prevent

10 | the violation of any right of the registrant of a mark."  15 U.S.C. § 1116(a).

11 |       According to well-established principles of equity, a plaintiff seeking a

12 | permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary

13 | damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in

14 | equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

15 | *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (interpreting similar

16 | language in considering a motion for permanent injunctive relief under the Patent Act).

17 | The Lanham Act provides, in the case of a motion for a permanent injunction, that a

18 | "plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of

19 | irreparable harm upon a finding of a [trademark] violation."  15 U.S.C. § 1116(a).

20 |       GS Holistic asks the court to enter the following permanent injunction enjoining

21 | The Greenroom and its "agents, employees, officers, directors, owners, representatives,

22 |

ORDER - 14

1  successor companies, related companies, and all persons acting in concert or participation

2  with" it from:

3      (a)  Import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment,

4          distribution, storage, shipment, licensing, development, display, delivery, marketing[,] advertising[,] or promotion of the counterfeit G Pen product

5          identified in the complaint and any other unauthorized G Pen product, counterfeit, copy or colorful imitation thereof[; and]

6

7      (b) Assisting, aiding or attempting to assist or aid any other person or entity in performing any of the prohibited activities referred to in Paragraph[] (a) above.

8

(Mot. at 13-14; *see also* Prop. Judgment at 2.)

9

        The court declines to enter the requested permanent injunction.  First, GS Holistic

10

argues only that it is entitled to injunctive relief "[b]y the reasons explained in [its]

11

Complaint." (Mot. at 13.)  It does not address the factors a court must consider before

12

entering a permanent injunction.  (*See id.*); *see eBay Inc.*, 547 U.S. at 391.  Second, the

13

injunction GS Holistic seeks now is broader than the injunction outlined in its complaint,

14

which does not include an injunction against "[a]ssisting, aiding or attempting to assist or

15

aid" others against performing the actions listed in part (a) of the proposed injunction.

16

(*Compare* Compl. at 15, *with* Prop. Judgment at 2.)  Third, although GS Holistic's

17

complaint describes the sale of one counterfeit Micro G Vaporizer displaying one

18

Infringing Mark, it requests a much wider injunction relating to "the counterfeit G Pen

19

product identified in the complaint and any other unauthorized G Pen product,

20

counterfeit, copy or colorful imitation thereof." (*Compare* Compl. ¶¶ 30, 36-40, *with*

21

Prop. Judgment at 2.)  Finally, "every order granting an injunction" must "describe in

22

ORDER - 15

1   reasonable detail—and not by referring to the complaint or other document—the act or

2   acts restrained or required." Fed. R. Civ. P. 65(d). GS Holistic's proposed order violates

3   this rule by referring to "the counterfeit G Pen product identified in the complaint." (*See*

4   Prop. Judgment at 2.) For these reasons, the court denies GS Holistic's request for a

5   permanent injunction.

6          4.       <u>Destruction of Infringing Products</u>

7          Finally, GS Holistic seeks an order directing Defendants, "at their cost, [to] deliver

8   to [GS Holistic] for destruction all products, accessories, labels, signs, prints, packages,

9   wrappers, receptables, advertisements, and other material in their possession, custody or

10   control bearing any of the G Pen Marks." (Mot. at 14; *see also* Prop. Judgment at 2;

11   Compl. at 16 (including an order for destruction of products in the prayer for relief).)

12   The Lanham Act authorizes the court to issue an order directing the destruction of articles

13   that infringe upon a trademark. 15 U.S.C. § 1118. Here, however, GS Holistic has not

14   presented any argument or evidence supporting its entitlement to this relief, and—as with

15   its request for a permanent injunction—its request for destruction of any article "bearing

16   any of the G Pen Marks" is not supported by its investigator's purchase of a single

17   vaporizer bearing an unspecified Infringing Mark. (*See* Mot. at 14; Compl. ¶ 30.) As a

18   result, the court denies GS Holistic's request for an order directing the destruction of

19   allegedly infringing products.

20          **IV.    CONCLUSION**

21          For the foregoing reasons, the court GRANTS in part and DENIES in part GS

22   Holistic's motion for default judgment (Dkt. # 20). Specifically, the court GRANTS GS

1  Holistic's request for entry of default judgment against The Greenroom and Ms. Mitchell;

2  AWARDS GS Holistic statutory damages in the amount of $2,000.00 and litigation costs

3  in the amount of $1,257.00; and DENIES GS Holistic's requests for entry of a permanent

4  injunction and for an order directing the destruction of infringing products.

5       Dated this 1st day of February, 2024.

6

7

8       JAMES L. ROBART
        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 17